STATE of Missouri, Plaintiff-Respondent,

v.

Ralph Edison PARCEL,
Defendant-Appellant.

No. 10118.

Missouri Court of Appeals,
Springfield District.

Feb. 1, 1977.

Motion for Rehearing or to Transfer
Denied Feb. 9, 1977.

Application to Transfer Denied
March 14, 1977.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Loren R. Honecker, Springfield, for defendant-appellant.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

BILLINGS, Chief Judge.

Defendant Ralph Edison Parcel was convicted of felony murder [§ 559.010, RSMo 1969 [1]] and sentenced to life imprisonment. In this appeal he challenges the sufficiency of the evidence to support his conviction and claims the trial court committed reversible error in failing to grant him a change of venue from Greene County and in admitting certain evidence at his trial. We affirm.

Defendant's confederate, Earl Albert Weeks, was earlier convicted in a separate trial of the brutal slaying of 81-year-old Lena Cukerbaum, a rural storekeeper, during the course of a robbery. The essential facts giving rise to the defendant's conviction are set forth in some detail in *State v. Weeks,* Mo.App., 546 S.W.2d 567, decided this date, and will not here be repeated except insofar as to rule defendant's points.

Defendant's testimony at his trial was, in most respects, corroborative of the state's principal witness Teitsworth. However, defendant stated he did not enter Mrs. Cukerbaum's store-dwelling, did not participate in the binding and beating of Mrs. Cukerbaum, and remained outside the building serving as a lookout while Weeks was inside. Defendant said Weeks was "in charge" the night of the robbery-murder and gave the orders. He understood the trio was only going to burglarize the Cukerbaum store and said he received about $100 from Weeks as his share of the proceeds from the robbery. He admitted that his earlier testimony in support of Weeks' motion for a new trial was a series of lies

---

1. § 559.010, RSMo 1969, was repealed by Laws 1975, p. ——, *House Bill No.* 150, which became effective September 28, 1975. A new felony murder statute, what is now § 559.007 RSMo Supp. 1975, was enacted. Defendant Parcel and his accomplice, Earl Albert Weeks, were tried before the effective date of the new law.

induced by his fear of and threats by Weeks.[2]

█ In his first point defendant does not question the death of Mrs. Cukerbaum but claims there was a lack of evidence to show that the homicide occurred during a robbery. In furtherance of this contention, the defendant argues that we should not consider his testimony in determining the sufficiency of the evidence to support his conviction for felony murder.

█ In our review we start with the well-established rule of law that "the facts in evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the State, and evidence and inferences to the contrary are rejected." *State v. Papin*, 386 S.W.2d 355, 359 (Mo.1965). It is also a well-settled rule of law in Missouri that when a defendant offers evidence in his own behalf he waives any objection to the trial court's overruling his motion for a judgment of acquittal at the close of the state's case. *State v. Hill*, 438 S.W.2d 244, 247 (Mo.1969); *State v. Wren*, 498 S.W.2d 806, 808 (Mo.App.1973). And, when a defendant chooses not to stand on his motion for a judgment of acquittal at the close of the state's case but presents evidence in his own behalf, the submissibility of the case is determined by an analysis of *all the evidence*. *State v. Sykes*, 372 S.W.2d 24, 25 (Mo.1963); *State v. Berry*, 526 S.W.2d 92, 95 (Mo.App.1975). As this court stated in *State v. Chester*, 445 S.W.2d 393 (Mo.App. 1969), at 395: "However, by testifying in his own behalf he waived any claim of error in overruling his motion at the close of the state's case [citations omitted] and submissibility must be determined upon the entire evidence. [Citations omitted]."

█ Defendant also suggests his right against self-incrimination was violated by the court's denial of his motion at the close of the state's case. This is a novel argument but not the law. If defendant felt the state's evidence was insufficient, he could have stood on his motion and questioned the matter of submissibility on appeal.

Aside from the foregoing, and for the moment ignoring defendant's incriminating testimony, the state's evidence, standing alone, was sufficient to support defendant's conviction of robbery-murder. The evidence detailed in *State v. Weeks*, and repeated at defendant's trial by Teitsworth and other state witnesses clearly demonstrates Teitsworth, Weeks, and defendant Parcel planned their criminal trip to the Springfield, Missouri, area and pursuant to the conspiracy robbed the "rich old lady" and in the process took her life. Teitsworth related conversations between defendant and Weeks as the trio fled the scene of the crime and returned to Iowa. Money and jewelry were missing from the Cukerbaum store-dwelling immediately after the commission of the crime. Weeks and defendant talked of the small amount of money they had obtained and the manner in which Mrs. Cukerbaum was bound and mistreated in an effort to obtain more money. On the day following the Saturday night murder, defendant had $436 in cash (approximately $100 in dollar bills) and a cut-off nylon in his pocket.

█ The basic elements of robbery are the taking of property of another by violence to his person or by putting that person in fear of some immediate injury to his person. *State v. Reynolds*, 521 S.W.2d 486 (Mo.App.1975); § 560.120, RSMo 1969. That Mrs. Cukerbaum was subjected to violence is an understatement. The living quarters of her store had been ransacked. The tackle box in which she regularly kept her money was empty and her jewelry

2. Inter alia, Weeks' motion for new trial, filed in his behalf by his lead trial attorney, a member of the Illinois bar, alleged Parcel was prevented from testifying in Weeks' behalf by Parcel's Springfield, Missouri, lawyer who assisted in Weeks' trial. At an evidentiary hearing Parcel so testified and stated Weeks was not with Teitsworth and him the fatal weekend. At his trial Parcel recanted this testimony. According to Parcel, Weeks was a "karate expert" and "he was always talking about gangster people he knows in Chicago, Quad Cities, Rock Island, Davenport, Moline, Illinois, area."

was missing. Immediately following the reunion of the Iowa trio, Weeks produced a hat full of money and complained about not getting more from the "old lady." His statement, as a coconspirator, was admissible against the defendant. *State v. Lee*, 522 S.W.2d 63, 66 (Mo.App.1975). As the Supreme Court of Missouri said in *State v. Deyo*, 387 S.W.2d 561 (Mo.1965), at 562: "In view of the fact that there was evidence of a conspiracy, the statements of one of the conspirators were admissible against the other conspirator."

 As earlier noted, we are not limited in our review of the question of submissibility to the state's evidence, although in our opinion it was sufficient. And when defendant's testimony favorable to the conviction is added, the scales become lopsided on the issue of submissibility of the death of an aged working woman during the course of a violent and savage robbery. The state was not required to prove the defendant committed each and every act that constitutes the criminal offense [*State v. Colthrop*, 437 S.W.2d 75, 77 (Mo.1969); *State v. Reynolds, supra*] and defendant Parcel is liable for the actions of his coperpetrator Weeks as well as his own. *State v. Young*, 490 S.W.2d 28, 30 (Mo.1973). Defendant's first point is denied.

 Defendant next contends the lower court erroneously denied his motions for a change of venue from Greene County. He says the extensive pretrial news coverage by newspapers, radio, and television prevented him from having a fair and impartial trial in that county.

The robbery-murder of Mrs. Cukerbaum occurred the night of November 30, 1974. A preliminary hearing for defendant and Weeks was held January 29, 1975. An information charging the two men with felony murder was filed February 6. They filed their joint motion for a change of venue from Greene County on March 18. A lengthy hearing was conducted on the matter by the Honorable Douglas W. Greene, Division Two, on March 24 and denied. The trial of Weeks began in Division Two on March 31 and concluded April 5.

Because defendant's motion for a severance from his codefendant had been sustained, his case was transferred to Division Three, the Honorable James H. Keet, Jr., presiding. Defendant on May 5 renewed his motion for a change of venue. As additional grounds he referred to the extensive publicity given the trial of Weeks. Again, a hearing was held (June 30) following which Judge Keet denied the application. Defendant's trial commenced on July 28 and ended on July 31.

We have carefully examined the nearly 300 pages of transcript of the two hearings and agree with the two trial judges that, contrary to defendant's allegations, the citizens of Greene County had not been prejudiced by the publicity surrounding the robbery-killing of Mrs. Cukerbaum and the events leading up to the defendant's trial. As to be expected, the news media reported events as they happened. Media representatives called by defendant and Weeks in their initial hearing uniformly testified they had not broadcast or reported any statements from the authorities relevant to the guilt or innocence of the two men charged or statements concerning any of the evidence or results of laboratory tests about the crime, or any admissions or confessions by the men. At this hearing various citizens of Greene County were called by the state and their testimony, except for one person, negated the allegations of prejudice arising from the complained-of publicity.

At the second hearing, in response to the defendant's averments of prejudice and introduction of additional news reports of Weeks' trial, the state called four Springfield residents who had been selected at random and not informed as to reason they had been summoned to court. Three of the witnesses recalled reading or hearing about the crime and Weeks' trial but remembered little or nothing about either event. The fourth witness did not recall either the crime or the trial.

 Rule 30.04, V.A.M.R., and § 545.490, RSMo 1969, provide that in a county such as

Greene County, the defendant seeking a change of venue must prove the truth of his allegations of prejudice by competent evidence and the state is authorized to offer rebutting evidence. It has long been the law that the granting of a change of venue pursuant to the foregoing procedure is a matter within the discretion of the trier of the facts [*State v. Odom*, 369 S.W.2d 173, 180 (Mo. banc 1963), *cert. denied*, 375 U.S. 993, 84 S.Ct. 634, 11 L.Ed.2d 479 (1964); *State v. Messino*, 325 Mo. 743, 761, 30 S.W.2d 750, 757 (1930)] and where the trial court, having heard the evidence for and against the application, arrives at a conclusion adverse to granting the change, such ruling is not to be disturbed on appeal unless an abuse of discretion is demonstrated. *State v. Barrington*, 198 Mo. 23, 85–86, 95 S.W. 235, 255 (banc 1905), appeal dismissed 205 U.S. 483, 27 S.Ct. 582, 51 L.Ed. 890 (1907); *State v. Johnson*, 522 S.W.2d 106, 110 (Mo.App.1975).

In this appeal the defendant has failed to demonstrate an abuse of discretion by the trial court. His argument in support of this point assumes prejudice by the inhabitants of Greene County by reason of their exposure to news reports of the crime and Weeks' trial. Such an assumption is not supported by the record.[3] Defendant's point is denied.

This brings us to defendant's remaining point. He claims a scarf that was placed in the mouth of the victim should not have been received as evidence because it was gruesome and inflamed the jury. He further argues that a proper foundation was not laid by the state for its admission.

The defendant initially objected to admission of the scarf because it was gruesome and inflammatory. The objection was overruled and the scarf and plastic bag which contained it were admitted as exhibit 35.

Later, the state offered this exhibit and three others, at which time defendant renewed his previous objection to exhibit 35 and "to all the exhibits on the grounds of improper foundation."

Defendant's generalized attack on the foundation for admitting the scarf does not preserve the question for review. This averment of error was not in his motion for new trial. Furthermore, the scarf was susceptible of positive identification and was so identified by officers as the scarf found in Mrs. Cukerbaum's mouth. *State v. Granberry*, 484 S.W.2d 295, 300–301 (Mo. banc 1972); *State v. Threat*, 530 S.W.2d 41 (Mo. App.1975).

The defendant's argument that the scarf "discolored with blood and kept in a container fouled with blood" was so gruesome as to outweigh its relevancy cannot stand and we find the trial court did not abuse its discretion by admitting this exhibit.

Demonstrative evidence of this nature is admissible if it throws any relevant light upon a material matter at issue. *State v. Evans*, 406 S.W.2d 612, 617 (Mo.1966). One issue was whether Mrs. Cukerbaum was robbed by force and violence to her person, and the exhibit was admissible to demonstrate this element of robbery. *State v. McRoberts*, 485 S.W.2d 70 (Mo.1972). It was also relevant to the state's theory that more than one person was involved in the binding by tape and wire of Mrs. Cukerbaum's hands and legs and gagging her while the place was ransacked.

The transcript shows the trial court examined the exhibit prior to its admission. We have viewed the exhibit and assume the brown discoloration found on the scarf and plastic bag is dried blood of the victim. Nevertheless, we agree with the trial court

---

**3.** Extensive voir dire by court and counsel of the 120 prospective jury panel members revealed roughly one-half had heard of the Cukerbaum murder in the media. All those who indicated they had formed an opinion based on news coverage were immediately excused by the court. Many of the panel members either had not heard of the crime or the Weeks' trial, or remembered very little about these events. Panel members who indicated detailed familiarity with the news coverage of the murder and trial were excused by the court. These were two in number.

that its probative value outweighed any gruesomeness and prejudicial effect. We also observe the exhibit was neither passed to nor flaunted before the jury. *State v. McRoberts, supra.*

The information, charging defendant with felony murder, was sufficient. The verdict was responsive and in proper form. Allocution was granted. The court determined defendant was subject to the Second Offender's Act and imposed sentence and entered judgment.

The judgment is affirmed.

All concur.